**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 18-cv-00268-CMA-STV

BASF CORPORATION,

    Plaintiff,

v.

WILLOWOOD, LLC,
WILLOWOOD USA, LLC,
WILLOWOOD LIMITED,
GREENFIELDS MARKETING, LIMITED,
RIGHTLINE, LLC

    Defendants.

---

**ORDER GRANTING DEFENDANT WILLOWOOD LIMITED'S MOTION TO DISMISS**
_____

This matter is before the Court on Defendant Willowood Limited's Motion to Dismiss, which asserts that the Court lacks personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). (Doc. # 60.) For the following reasons, the Court concludes that it does not have personal jurisdiction over Willowood Limited and accordingly grants the motion.

## I. BACKGROUND

On February 1, 2018, Plaintiff BASF ("BASF") filed a lawsuit against Defendants Willowood, LLC ("W-LLC"), Willowood USA, LLC ("W-USA"), Greenfields Marketing, Limited ("Greenfields"), RightLine, LLC ("RightLine"), and Willowood Limited ("W-Limited") for patent infringement pursuant to 35 U.S.C. § 1 et seq. (Doc. ## 1, 50.)

BASF avers all Defendants are subject to personal jurisdiction in the federal district of Colorado. (*Id.*) W-Limited by contrast, argues that it is not subject to either general or specific jurisdiction in Colorado. (Doc. # 60.) The following facts are drawn from the Complaint and are taken as true for the purposes of the instant motion.

BASF is incorporated in Delaware, and its principal place of business is in Florham Park, New Jersey. (Doc. # 50 at ¶ 1.) BASF researches, develops, tests, and sells different products and technologies in the agrochemical field. (*Id.* at ¶ 41.) BASF researched and developed pyraclostrobin, a "break-through fungicidal chemical for use (1) in disease control and plant health in a variety of plants, (2) as a seed treatment for disease control and plant health in a variety of crops, and (3) as a drench for soil borne disease control and improved plant health in production ornamentals." (*Id.* at ¶ 42.) BASF obtained two patents[1] relating to the process of manufacturing the pyraclostrobin chemical compound. (*Id.* at ¶¶ 43, 44, 48.) As a result, BASF has manufactured, marketed, and sold pyraclostrobin end-use products under various different brands. (*Id.* at ¶ 42.) Accordingly, BASF received several registrations for pyraclostrobin from both the Environmental Protection Agency and state authorities as early as September 30, 2002. (*Id.* at ¶¶ 53–56.)

---

[1] Patent '392 titled "Crystalline modifications to Pyraclostrobin" was issued on October 19, 2010. (*Id.* at ¶ 44.) This patent describes various forms of pyraclostrobin, including several crystalline modifications. (*Id.* at ¶ 45.) Patent '451 titled "Method for Producing 2-(3-Pyrazolyl-Oxymethylene) Nitrobenzenes" was issued on October 17, 2000. (Doc. # 50 at ¶ 48). It describes processes for preparing the aforementioned chemical compound, "which include an intermediate for preparing pyraclostrobin." (*Id.* at ¶ 49.) It also describes processes for making, and the method of using, a type of modification for controlling phytopathogenic fungi. (*Id.*)

Defendant W-Limited is a limited liability company that is incorporated and has its principal place of business in Hong Kong. (*Id.* at ¶ 4.) Defendant W-USA, a limited liability company incorporated in Oregon with its principal place of business in Broomfield, Colorado, is a wholly owned subsidiary of W-Limited. (*Id.* at ¶¶ 1 and 19.) Defendants W-LLC and RightLine are both wholly owned subsidiaries of W-USA.[2] (Doc. # 50 at ¶¶ 17–18.) Defendants W-USA, W-LLC, and RightLine sought and received approval from the Colorado Department of Agriculture to sell products allegedly obtained in violation of the '392 and '451 patents.[3] (*Id.* at ¶ 22.)

BASF filed an amended complaint on July 30, 2018. (Doc. # 50.) W-Limited subsequently filed the instant Motion to Dismiss for lack of personal jurisdiction on August 15, 2018. (Doc. # 60.) Plaintiff filed a response on September 5, 2018 (Doc. # 65) and W-Limited filed a reply on September 19, 2018 (Doc. # 70).

## II. LAW

To establish personal jurisdiction over a nonresident defendant, a plaintiff must show both that jurisdiction is proper under the forum state's long-arm statute and that the exercise of personal jurisdiction over the defendant comports with the Due Process Clause of the United States Constitution. *See Equifax Servs., Inc. v. Hitz*, 905 F.2d 1355, 1357 (10th Cir. 1990). Colorado's long-arm statute permits the Court to exercise personal jurisdiction to the full extent of the Due Process Clause, and therefore, the

---

[2] W-LLC and RightLine are limited liability companies incorporated in Oregon with their respective principal places of business in Broomfield, Colorado. (Doc. # 50 at ¶ 2, 5.)

[3] *See supra* note 1.

analysis collapses into a single due process inquiry. *See* Colo. Rev. Stat. §§ 13-1-124(1)(a)–(b); *Dart Int'l, Inc. v. Interactive Target Sys., Inc.*, 877 F. Supp. 541, 543 (D. Colo. 1995) (citing *Safari Outfitters, Inc. v. Superior Court*, 448 P.2d 783 (1968)); *SGI Air Holdings II LLC. v. Novartis Int'l, AG*, 192 F. Supp. 2d 1195, 1197–98 (D. Colo. 2002).

"The Due Process Clause protects a [defendant's] liberty interest in not being subject to the binding judgments of a forum with which [it] has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72 (1985) (quoting *Int'l Shoe Co. v. State of Washington*, 326 U.S. 310, 319 (1945)). The cornerstone of the personal jurisdiction inquiry is whether "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Trierweilver v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1532 (10th Cir. 1996) (quoting *WorldWide Volkswagen v. Woodson*, 444 U.S. 286, 295 (1980)). To comport with due process limitations, a court may exercise personal jurisdiction only over defendants that have "certain minimum contacts [with the jurisdiction] . . . ." *Int'l Shoe*, 326 U.S. at 316 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

When there are multiple defendants, as is the case here, "minimum contacts must be found as to each defendant over whom the court exercises jurisdiction." *Home-Stake Prod. Co. v. Talon Petroleum, C.A.*, 907 F.2d 1012, 1020 (10th Cir. 1990). The minimum contacts standard may be satisfied in either of two ways—general or specific jurisdiction. *See Kuenzle v. HTM Sport–Und Freizeitgerate AG*, 102 F.3d 453, 455 (10th

Cir. 1996). A court's duty is the same in either case: it must guarantee that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *World–Wide Volkswagen*, 444 U.S. at 292 (1980) (quoting *Int'l Shoe*, 326 U.S. at 316) (internal quotation omitted).

A court may assert general jurisdiction over a foreign corporation to hear any and all claims against it when its affiliations with the state are so "continuous and systematic" such that it is essentially at home in the forum state. *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014) (quoting *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011)). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place." *Daimler*, 571 U.S. at 137; *see also Goodyear*, 564 U.S. at 919. "The 'paradigm' forum[] in which a corporate defendant is 'at home' . . . [is] the corporation's place of incorporation and its principal place of business." *BNSF Ry. Co. v. Tyrell*, 137 S. Ct. 1549, 1558 (2017) (internal citations omitted).

Specific jurisdiction, on the other hand, depends on an "affiliation between the forum and the underlying controversy." *Id*. For a court to assert specific jurisdiction, the out-of-state defendant must have (1) purposefully directed its activities at residents of the forum, and (2) the litigation must result from alleged injuries that "arise out of or relate to" those activities. *Burger King*, 471 U.S. at 472. The purposeful direction requirement "ensures that defendants will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, . . . or of the unilateral activity of another party or a third person." *Id*. at 475. To determine whether a defendant in a tort-

based lawsuit "purposefully directed its activities at the forum state," the Court looks for three elements: (1) an intentional act that was (2) aimed expressly at the forum state with (3) the knowledge that the brunt of the injury would be felt in the forum state. *Calder v. Jones*, 465 U.S. 783, 789–90 (1984).

### III. <u>STANDARD OF REVIEW</u>

Under Rule 12(b)(2) of the Federal Rules of Civil Procedure, a motion to dismiss may be granted if the court lacks personal jurisdiction over the defendant. Although the plaintiff bears the burden of establishing personal jurisdiction over the defendant, at the preliminary stage of the litigation, this burden is "light." *Intercon, Inc. v. Bell Atl. Internet Sol., Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000) (quoting *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995)). "The plaintiff may meet this burden 'by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant.'" *Melea, Ltd. v. Jawer SA*, 511 F.3d 1060, 1065 (10th Cir. 2007) (quoting *TH Agric. & Nutrition, LLC v. Ace European Grp. Ltd.*, 488 F.3d 1282, 1286 (10th Cir. 2007)). Where there has been no evidentiary hearing and the motion to dismiss for lack of personal jurisdiction is decided on the basis of affidavits and other written material, the plaintiff need "only make a prima facie showing of personal jurisdiction." *Id.*

The allegations in the complaint must be taken as true only so long as they remain undisputed by the defendant's affidavits. *Id.* Furthermore, only the well-pled facts of plaintiff's complaint, as distinguished from mere conclusory allegations, must be accepted as true. *Wenz*, 55 F.3d at 1505. If the jurisdictional allegations are challenged

6

by an appropriate pleading, the plaintiff has "the duty to support jurisdictional allegations in a complaint by competent proof of the supporting facts." *Pytlik v. Prof'l Ltd.*, 887 F.2d 1371, 1376 (10th Cir. 1989).

## IV. ANALYSIS

BASF states that W-Limited is subject to personal jurisdiction in Colorado on essentially three separate theories. First, W-USA is W-Limited's alter ego. (Doc. # 65 at 13.) Second, W-Limited is alternatively subject to personal jurisdiction by itself. (Doc. # 50 at ¶ 8.) Third, the Court may exercise jurisdiction over W-Limited pursuant to Federal Rule of Civil Procedure 4(k)(2). (*Id.* at ¶ 38.) The Court will consider each argument in turn.

### A. Alter Ego Relationship Between W-Limited and W-USA

BASF alleges that W-Limited is subject to personal jurisdiction in Colorado because W-USA is the alter ego, or agent, of W-Limited. (Doc. # 65 at 13.) BASF asserts W-USA is a wholly owned subsidiary of W-Limited and its principal place of business in Broomfield, Colorado. (Doc. # 50 at ¶¶ 1, 19.) Further, W-Limited allegedly established W-USA as a distributor for sales to the United States market. (*Id.* at 20.) W-Limited imports and supplies crop protection products to W-USA and/or W-LLC. (*Id* at ¶ 21.) W-USA purportedly registered and sold infringing products, obtained in violation of the '392 and '451 patents, in Colorado. (*Id.* at ¶¶ 22, 76–81.) BASF also alleges that W-Limited directed W-USA to "take action" in Colorado. (Doc. # 65 at 13.)

Conversely, W-Limited argues that W-USA is not its alter ego because W-Limited does not own W-USA, the entities do not have common controlling ownership, and W-USA's profits do not flow to W-Limited. (Doc. # 70 at 8–9.) The Court agrees.

In the instant case, Federal Circuit law controls personal jurisdiction questions because the "jurisdictional issue is intimately involved with the substance of the patent laws." *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1328 (Fed. Cir. 2008). However, state law governs whether an alter ego relationship exists. *See Sys. Div., Inc. v. Teknek Elecs., Ltd.*, 253 F. App'x 31, 34 (Fed. Cir. 2007) (evaluating alter ego status under existing state law when determining whether to add parties not connected to the underlying patent infringement litigation); *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*, 1 F. App'x 879, 885 (Fed. Cir. 2001) (evaluating the doctrine of successor liability and alter ego status under existing state law in a patent infringement case).

In Colorado, the agency theory of personal jurisdiction is based on the concept that a principal is responsible for the actions of its agent. *First Horizon Merch. Servs., Inc. v. Wellspring Capital Mgmt., LLC*, 166 P.3d 166, 177 (Colo. App. 2007). "An agent can make his principal responsible for his actions if he is acting pursuant to either actual or apparent authority." *Willey v. Mayer*, 876 P.2d 1260, 1264 (Colo. 1994). An agent may be a corporation as well as an individual. "[A]s all corporations must necessarily act through agents, a wholly owned subsidiary may be an agent and when its activities as an agent are of such a character as to amount to doing business of the parent, the parent is subjected to the in personam jurisdiction of the state." *SGI Air Holdings II LLC*

*v. Novartis Int'l AG*, 239 F. Supp. 2d 1161, 1166 (D. Colo. 2003) (quoting *Curtis Publ'g Co. v. Cassel*, 302 F.2d 132, 137 (10th Cir.1962)).

If a subsidiary is merely an alter ego of the principal, the corporate veil may be pierced, "if not doing so would defeat public convenience, justify wrong, or protect fraud." *Great Neck Plaza, L.P. v. Le Peep Rests., LLC*, 37 P.3d 485, 490 (Colo. App. 2001). "For purposes of personal jurisdiction, agency and alter ego, while different legal concepts, often depend on the same facts when parent and subsidiary corporations are involved. Particularly, facts concerning the amount of control exercised by the corporate parent over its subsidiary are relevant for both theories." *First Horizon*, 166 P.3d at 177. "Such control could be evidence that the subsidiary is the parent's alter ego because the subsidiary has no real separate corporate existence." *SGI*, 239 F.Supp.2d at 1166.

Similarly, such control could be evidence that the subsidiary is the parent's agent because the subsidiary is conducting the "real" business of the parent. *First Horizon*, 166 P.3d at 177. The objective of either theory is to establish that the parent company has the minimum contacts with the forum necessary to support a finding of jurisdiction. *Id.* (internal citation omitted). "To exercise personal jurisdiction on a theory of either agency or alter ego, the plaintiff bears the burden of demonstrating a prima facie case." *Id.* at 178.

In this case, BASF's statements in its Amended Complaint present nothing more than conclusory allegations with regard to the theory of agency or alter ego. Although BASF alleges in its Reponses that W-Limited directed W-USA to take action, BASF does not present any specific facts to support *what kind* of action was suggested or if

9

that action related to W-USA's registration or distribution of the disputed products. Moreover, W-Limited agues it does not control W-USA. (Doc. # 70 at 9.) To support this assertion, Vijay Mundhra, the Managing Director and controlling owner of W-Limited, declared that W-Limited does not "own any of [W-USA]'s membership interests," and W-Limited "had nothing to do with [W-USA]'s attempts to register these products in the United States." (Doc. # 61-1 at ¶ 8, 13.)

Although Mr. Mundhra did own both W-Limited and W-USA at one point, he sold more than 50% of the controlling interest to a private equity group in April 2016. (Doc. # 70-1 at ¶ 2.) Mr. Mundhra currently owns only 25% of W-USA's membership interests. (*Id.* at ¶ 3.) Mr. Mundhra admits that he is on the board of W-USA, but as a minority owner, he does not have control of the company. (*Id.* at ¶ 4.) Further, W-USA pays W-Limited for products supplied to W-USA, therefore W-USA "is not an affiliate of or owned or controlled" by W-Limited and W-USA's profits do not flow to W-Limited. (*Id.* at ¶ 6.) Lastly, Mr. Mundhra asserts W-Limited was not involved in supplying or facilitating W-USA's acquisition of the products at issue because W-Limited "did not broker the allegedly-infringing products for" W-USA. (*Id.* at ¶ 10.)

Accordingly, the Court finds that BASF has not pled enough facts to support its alter ego or agency theories for purposes of establishing general jurisdiction. As such, the Court will next consider whether W-Limited is subject to general jurisdiction notwithstanding its affiliation with W-USA.

### B. General Jurisdiction – W-Limited as a Sole Entity

W-Limited, by itself, is not subject to general jurisdiction. Plaintiff avers that jurisdiction in Colorado is appropriate because Defendants have continuous and systematic general business contacts in Colorado: "they have committed acts of patent infringement in the State of Colorado . . . [they] regularly transact business within the [s]tate . . . and [they] regularly and purposefully avail themselves of the benefits of the [s]tate . . . by . . . marketing, using, shipping, offering to sell or selling, or causing others to use, offer to sell, or sell, agrochemical products in the State . . ." (Doc. # 50 at ¶ 8.) To supplement these allegations, Plaintiff, in its Response, argues that W-Limited is "at home" in the United States because it generates approximately 50% of its total revenue from the United States. (Doc. # 65 at 6.)

BASF's allegations misconstrue the minimum contacts analysis in evaluating general jurisdiction in the forum state, specific jurisdiction, and jurisdiction under Rule 4(k)(2). Rule 4(k)(2) establishes jurisdiction "[w]hen a plaintiff's claims arise under federal law and the defendant is *not* subject to the jurisdiction of any state's court of general jurisdiction." *GCIU-Employer Ret. Fund v. Coleridge Fine Arts*, 700 F. App'x 865, 867 (10th Cir. 2017) (emphasis added). Thus, the Court will first consider whether W-Limited is subject to general jurisdiction in Colorado before analyzing specific jurisdiction and jurisdiction under Rule 4(k)(2).

Although the general jurisdiction inquiry may investigate "an appraisal of a corporation's activities in their entirety," the inquiry still focuses on whether a corporation is "at home" in the *forum state*. *BNSF*, 137 S. Ct. at 1559 (internal citation omitted)

(emphasis added). Moreover, the minimum contacts inquiry is not whether a foreign corporation's in-forum contacts can be said to be in some sense "continuous and systematic;" it is whether that corporation's "affiliations with the state are so continuous and systematic as to render [it] essentially at home in the forum State." *Goodyear*, 564 U.S.at 919. W-Limited is in no sense at home in Colorado. W-Limited is not incorporated in Colorado, nor does it have its principal place of business in Colorado. (Doc. # 50 at ¶ 4.) W-Limited does not have any "employees, office locations, bank accounts, or assets in the United States." (Doc. # 60-1 at 1); *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 412 (finding that the forum state did not have general jurisdiction over defendant when it was not incorporated there and did not own, lease, posses, or maintain property or places of business in the state); *see also Goodwin v. Hatch*, 16-cv-00751-CMA-KLM, 2018 WL 2196057, at *3 (D. Colo. May 14, 2018) (same).

      Based on these facts, it appears W-Limited's connections to Colorado fall far short of the "continuous and systematic general business contacts" that give rise to general jurisdiction and would enable the Court to hear any and all claims related to W-Limited. *See Helicopteros*, 466 U.S. at 416 (holding that defendant's contacts with Texas, including regularly buying parts and helicopters from a company within the state and sending personnel there for training and visits, were not sufficiently continuous and systematic to give rise to general personal jurisdiction). Accordingly, the Court finds it does not have general jurisdiction over W-Limited. The Court now turns to whether W-Limited is subject to specific jurisdiction.

## C. Specific Jurisdiction and Rule 4(k)(2)

BASF avers specific jurisdiction in Colorado is appropriate pursuant to Colorado's long arm statute and Rule 4(k)(2) because "BASF's claims against W-Limited arise out of W-Limited's contacts with Colorado and/or the United States." (Doc. # 65 at 8.)

When a plaintiff's claims arise under federal law and the defendant is not subject to general jurisdiction, "Rule 4(k)(2) of the Federal Rules of Civil Procedure provides for federal long-arm jurisdiction if the plaintiff can show that the exercise of jurisdiction comports with due process." *GCIU-Emp'r Ret. Fund.*, 700 F. App'x at 868 (internal citations omitted). "To resolve th[e] issue [of whether the exercise of federal jurisdiction satisfies Fifth Amendment due process standards], we must determine whether Defendants have had minimum contacts with the United States." *Id.* (citations omitted). "Consistent with the minimum contacts standard, a federal court may exercise specific jurisdiction over a foreign defendant if the defendant purposefully directed its activities at the forum and the *plaintiff's injuries arose from the defendant's forum-related activities*." *Id.* (emphasis added). Accordingly, the Court will evaluate specific jurisdiction and 4(k)(2) together because both analyses are the same.

In its Amended Complaint, BASF alleges the "acts of patent infringement [occurred] in the State of Colorado" and W-Limited "deriv[es] substantial revenue" from "among other things, marketing, using, shipping, offering to sell or selling, or causing others to use, offer to sell, or sell, agrochemical products in the State of Colorado." (Doc. # 50 at ¶ 8.) BASF asserts that the Amended Complaint has enough facts to

13

establish how W-Limited is subject to specific jurisdiction because its affiliates "obtained the necessary registrations for the infringing pyraclostrobin products" in Colorado and "W-Limited's relationship to [the other Defendants is] clear." (Doc. # 65 at 9.)

These allegations generally argue that the first prongs of the *Calder* test—requiring an intentional act directed at the forum state—have been met because the facts as alleged should be taken as true and therefore evidence W-Limited's intentional actions to direct business to Colorado. *See* (*id*); *see also supra* Section II.

The Court agrees that the Amended Complaint alleges enough facts to explain how all Defendants, **except** W-Limited, are subject to jurisdiction in Colorado. BASF details how W-USA, W-LLC, RightLine and Greenfields sought registration and approval for different products, some of which are at issue in this litigation. (Doc. # 50 at ¶ 9–18, 23–37.) Then BASF merges all defendants under one name, Willowood, to further detail "Willowood's Regulatory Registrations" and "Acts Giving Rise to This Action." (*Id.* at 62–87.) However, BASF's argument assumes the truth of the alter ego theory, which this Court has already rejected in Section IV(a). The Court notes that merging all defendants under one name cannot accurately detail which facts plausibly establish jurisdiction, especially when certain alleged facts cannot apply specifically to W-Limited. For example, BASF alleges, "Willowood has been seeking registrations of its Willowood Pyrac 2EC with numerous state regulatory authorities." (*Id.* at 62.) Although BASF alleges, in great detail, how every other defendant sought registration of this product, BASF never alleges that W-Limited attempted to register a product itself. Thus, having

no way of distinguishing when W-Limited's actions differ from all other Defendants, the Court cannot assume that such statements equally apply to W-Limited.

Moreover, the Court must take as true BASF's **well-pled** facts—as opposed to conclusory allegations—and only to the extent those facts are not contradicted by W-Limited's affidavits. *Melea, Ltd.*, 511 F.3d at 1065; *see also Goodwin*, 2018 WL 2196057 at *3 (finding that the allegation, "defendants have knowingly and intentionally aimed unlawful and tortious acts at Plaintiff, in this district" is insufficient to establish jurisdiction because it is conclusory and contradicted by defendants' affidavits). Here, BASF's allegations are both conclusory and directly contradicted by affidavits from W-Limited's Managing Director, Mr. Mundhra. (Doc. ## 60-1, 70-1.) The second affidavit submitted by Mr. Mundhra states W-Limited "did not source the allegedly-infringing products" to W-USA nor did it "buy or take title to any of the allegedly-infringing products". (Doc. # 70-1 at ¶ 9, 11.)

The parties do not dispute that W-Limited derives 50% of its revenue from the United States. However, BASF has failed to connect any percentile of W-Limited's revenue stemming from Colorado to support its specific jurisdiction assertion. Moreover, BASF has failed to allege any fact to support that any percentile of W-Limited's revenue was generated from selling **the infringing products** in the United States for Rule 4(k)(2) jurisdiction. Finally, after setting aside BASF's conclusory and contradicted allegations, the Court finds nothing in the Amended Complaint that supports a conclusion that W-Limited purposefully directed its activities to Colorado. The Court accordingly need not reach the question of whether BASF's injuries arose out of W-

Limited's contacts with the forum because W-Limited did not purposefully sell the infringing products at issue in Colorado. Thus, the Court finds that it does not have specific jurisdiction over W-Limited pursuant to the Colorado long-arm statute or Federal Rule of Civil Procedure 4(k)(2).

## V. **CONCLUSION**

Based on the foregoing analysis, the Court GRANTS Defendant's Motion to Dismiss (Doc. # 60.) and Defendant Willowood Limited is DISMISSED from this civil action. It is

FURTHER ORDERED that the caption on all subsequent filings shall reflect the removal of Defendant Willowood Limited as a Defendant in this case.

DATED: January 14, 2019

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge